**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

**TIMOTHY FORTSON,**

      **Plaintiff,**

      **v.**

**CHARLES HENNESS, *et al.*,**

      **Defendants.**

**Case No. 1:22-cv-410**

**JUDGE DOUGLAS R. COLE**
**Magistrate Judge Vascura**

**OPINION AND ORDER**

    This cause is before the Court on two Reports and Recommendations (R&Rs),
the parties' objections to those R&Rs, and one additional motion. In the first R&R,
issued January 25, 2023, the Magistrate Judge recommends (1) allowing Plaintiff
Timothy Fortson to proceed on his excessive force claims against Defendant Charles
Henness in his individual capacity arising from an incident in August 2020, and
against Defendants Charles Anderson, James Capella, and Bradley Mann in their
individual capacities arising from an incident in April 2022; and (2) dismissing
Fortson's remaining claims pursuant to 28 U.S.C. §§ 1915(e) and 1915A. (January
R&R, Doc. 16, #155). Fortson timely objected to the January R&R (Doc. 20), but no
other party did. In the second R&R, issued June 15, 2023, the Magistrate Judge
recommends denying Defendants' Motion for Summary Judgment (Doc. 22) on the
remaining excessive force claims set forth above.[1] (June R&R, Doc. 27, #329). The

---

[1] Defendants first filed a copy of the Motion for Summary Judgment that was not fully
searchable. (*See* Doc. 22). They then filed a fully text-searchable copy. (*See* Doc. 24). Because
the R&R refers to Document 22 and that is the pending motion listed on the docket, the Court
refers to Document 22 throughout this opinion, rather than Document 24.

four defendants implicated by the June R&R—Henness, Anderson, Capella, and Mann—timely objected. (Doc. 28). And Fortson filed a Motion for Order Compelling Discovery. (Doc. 35). The Magistrate Judge has since denied that motion. (Doc. 37).

For the reasons discussed below, the Court **OVERRULES** Fortson's objections (Doc. 20) and **ADOPTS** the January R&R (Doc. 16), thereby dismissing all claims except those the January R&R specifically recommended should go forward. And because the Proposed Amended Complaint is Fortson's second failed attempt to plead a claim on which relief can be granted, it **DISMISSES** those claims **WITH PREJUDICE.** As to those remaining claims, the Court **REJECTS** the June R&R (Doc. 27). Contrary to the recommendation in the June R&R, the Court **GRANTS** Defendants' Motion for Summary Judgment (Doc. 22) and thus **DISMISSES** all remaining claims **WITH PREJUDICE**. Accordingly, it **SUSTAINS** Defendants' objections to the June R&R (Doc. 27). Finally, in the interest of finality, rather than waiting for any objections to the Magistrate Judge's recent order on the motion to compel, the Court has independently reviewed that motion and **DENIES** Fortson's Motion for Order Compelling Discovery (Doc. 35).

## BACKGROUND

Plaintiff Timothy Fortson, an inmate at the Warren Correctional Institution, moved pro se for leave to proceed in forma pauperis on July 15, 2022, to which he attached a Complaint asserting claims under 42 U.S.C. § 1983. (Doc. 1). In that Complaint, Fortson alleged that prison staff members violated his constitutional rights on two occasions—August 12, 2020, and April 20, 2022. (Doc. 2, #54–61).

The Magistrate Judge screened the Complaint under 28 U.S.C. § 1915(e)(2) ("Notwithstanding any filing fee … the court shall dismiss the case at any time if the court determines that … the action or appeal is frivolous or malicious; [or] fails to state a claim on which relief may be granted."). *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (Holding that to state a claim on which relief may be granted to avoid dismissal, a plaintiff must allege "sufficient factual matter … to state a claim to relief that is plausible on its face." (cleaned up)); *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (applying Federal Rule of Civil Procedure 12(b)(6) standards to a court's review under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A). And she issued an R&R (1) advising the Court to dismiss all claims except Fortson's excessive force claims against Henness (for both incidents) and Capella (for the April 2022 incident) in their individual capacities, but (2) recommending allowing Fortson to proceed on those latter claims. (Doc. 3, #67–73). The Complaint was filed on the docket that same day. (Doc. 2). Neither party objected to the R&R, and the Court issued an Order adopting the R&R on September 29, 2022. (Doc. 9).

Soon after,[2] Fortson mailed the Court a "declaration in support of complaint" that more fully detailed his allegations against the staff members named in his original Complaint. (Doc. 10). Henness and Capella moved to strike Fortson's Declaration by arguing that it was, in effect, an untimely objection. (*See* Doc. 13). The Court treated the Declaration as a motion for leave to file an amended complaint,

---

[2] Although the Court received Fortson's Declaration on October 21, 2022, he dates it October 14, 2022. (Doc. 10, #98). The postmark on the envelope is October 17, 2022. (Doc. 10-2, #127).

3

granted that motion, ordered Fortson to file an amended complaint incorporating the allegations raised in the Declaration, and denied Defendants' Motion to Strike as moot. (Doc. 14, #140). It also directed the Magistrate Judge to screen that amended complaint under 28 U.S.C. § 1915(e)(2), once Fortson filed it. (*Id.*).

Next, Fortson filed what he labeled a Proposed Amended Complaint (Doc. 15). That Proposed Amended Complaint again addresses the same incidents that allegedly occurred on August 12, 2020, and April 20, 2022. As to the former, Fortson says that Henness "pinn[ed] plaintiff against the side of the med cart at the same time hanging [F]ortson over the side of the moving cart." (*Id.* at #142). As a result, "Plaintiff struck his head and at this position plaintiff could only [sic] smell exhaust fumes through his mask." (*Id.*).

The Proposed Amended Complaint then turns to the incident that allegedly occurred on April 20, 2022, when Fortson requested medical aid after hitting his head. (*Id.*). According to Fortson, after he received the head injury, he requested to go to the medical unit. (*Id.*). He contends that, during transport, Charles Anderson and James Capella "tossed [him] on the cart" so that his back landed on his handcuffed wrists, causing him to "yell[] out in pain." (*Id.*). Further, according to Fortson, Bradley Mann pushed his leg over his head until he screamed in pain while he was on the medical cart. (*Id.* At #143). Then, Fortson says that Defendants ignored his "serious head wound" for 15 minutes while he lay on the medical cart. (*Id.*).

Finally, Fortson alleges that Henness ordered Knick, Anderson, and Capella to shackle him. (*Id.*). He says that, while he was shackled, "Knick was seen doing

something to [his] right lower shin, [] which may have left a hole in [his] leg." (*Id*.). And he alleges that Anderson, Knick, Capella, Mann, and Starkey used excessive force while Henness "stood by saying [Fortson] was just dehydrated." (*Id*.).

The Magistrate Judge issued an R&R (Doc. 16) after screening the Proposed Amended Complaint under 28 U.S.C. §§ 1915(e) and 1915A in January 2023. Based on Fortson's new allegations, she construed the Proposed Amended Complaint as asserting claims for excessive force and deliberate indifference to medical needs against all Defendants in both their individual and official capacities.[3] (*Id*. at #152). More specifically, she construed Fortson's Proposed Amended Complaint as asserting excessive force claims against Henness arising out of the August 2020 incident, excessive force claims against all Defendants arising out of the April 2022 incident, and deliberate indifference claims against all Defendants arising out of the April 2022 incident. (*Id*. at #152–53). All those Eighth Amendment claims would arise under § 1983.

Of those claims, she recommended allowing two sets of excessive force claims— the claim against Henness in his individual capacity arising out of the August 2020 incident, and those claims against Anderson, Capella, and Mann in their individual

---

[3] Although the Magistrate Judge never explicitly stated whether she was construing the Proposed Amended Complaint as raising claims against Defendants in their individual and/or official capacities, she recommends allowing only certain individual-capacity claims to proceed. (Doc. 16, #155). That recommended disposition suggests that she construed the Proposed Amended Complaint as raising claims against all Defendants in both capacities. Any official-capacity claims are nonstarters, though, because Fortson seeks only monetary relief. (Doc. 15, #144). As a result, all his official-capacity claims are barred by the Eleventh Amendment. *Wolfel v. Morris*, 972 F.2d 712, 718-19 (6th Cir. 1992) (holding that claims against Ohio prison officials in their official capacities were claims against the state of Ohio). So the Court need not discuss those claims in greater detail.

capacities arising out of the April 2022 incident—to proceed. (*Id.* at #155). But she recommended dismissing all of Fortson's other claims related to the April 2022 incident. (*Id.*). She specifically recommended dismissing the claims for excessive force against Knick, Starkey, and Henness in connection with the April 2022 incident because Fortson did not make specific allegations that those defendants acted in any way that could give rise to a constitutional violation. (*Id.* at #153–54). And she recommended dismissing all of Fortson's deliberate indifference to medical need claims arising from the April 2022 incident because "Plaintiff has not alleged any detrimental physical effect from the fifteen-minute delay in medical care to treat his head injury." (*Id.* at #154–55).

Fortson lodged two objections to the January R&R, both directed at the April 2022 incident. First, he says that Henness was acting with retaliatory intent in April 2022, so the claims against Henness from that incident should not be dismissed. (Doc. 20, #173). Second, responding to the R&R's claim that he had "not alleged any detrimental physical effect," (Doc. 16, #155), Fortson says that he could not get information from his medical file, but that he has experienced lasting injuries: numbness of his lower right leg, along with scarring and limited rotation of his left wrist. (Doc. 20, #174). He also filed another Declaration. (Doc. 21).

Then, while those objections were pending, the four Defendants (as to whom the Magistrate Judge had not recommended dismissal) moved for summary judgment on the remaining excessive force claims relating to the incidents on both August 2020 and April 2022 (i.e., the claims that the January R&R recommended should move

6

forward). (Doc. 22). First, these Defendants argue that they are entitled to summary judgment because the medical reports that they attach to their Motion show that Fortson never suffered any serious injury during either incident, which means he cannot satisfy the objective element of his Eighth Amendment claims.[4] (*Id.* at #186–89). Second, they argue that he cannot satisfy the subjective component of those claims because, both times, Defendants applied only the force necessary to transport Fortson safely to medical treatment. (*Id.* at #187–89).

More specifically, as to the August 2020 incident, Henness asserts that he used minimal force to do two things: to move Fortson's torso to avoid Fortson's vomiting on Henness and to extricate his hand from Fortson's. (*Id.* at #186). And he submits Use of Force reports prepared at or near the time of the incident that contain descriptions of the events that occurred, as told by Henness, various other corrections officers, and Fortson himself. (Doc. 22-2, #193–98, 200–08).

Turning to the April 2022 incident, Anderson, Cappella, and Mann assert that "Defendants used de minimis force in response to a reasonably perceived threat to officer and inmate safety" because Fortson was combative. (*Id.* at #189). They bolster this claim by pointing to Fortson's "suspected intoxication" on that date. (*Id.* at #188–89 ("Plaintiff was then admitted to an infirmary cell for observation due to suspected intoxication … . Given Plaintiff's intoxication and uncooperative behavior, the

---

[4] It is unclear to the Court why Fortson claims he could not access his medical records, but at the same time, the prison personnel are able to attach medical reports to their motion for summary judgment.

7

superficial bruising on his wrists and ankles were not[] 'sufficiently serious' to offend 'contemporary standards of decency.'" (citations omitted))).

Fortson responded. (Doc. 25). He argues that (1) he could not have vomited during the August 2020 incident because he was wearing a mask, (Doc. 25, #309); (2) various video footage from will vindicate him, (*id.* at #308, 310); and (3) his demeanor during the April 2022 incident was consistent with a head injury, not intoxication, (*id.* at #309–10). He also attaches several exhibits. One is a copy of a document on Ohio Department of Rehabilitation and Correction letterhead captioned "Legal Services Decision on Appeal." (*Id.* at #314). That document says that "[t]he officers had to place leg chains on the inmate as he continued to flail and [to] stiffen his legs." (*Id.*). Two others are medical reports, each taken immediately after one of the incidents at issue—copies of the same medical reports Defendants attached to their Motion for Summary Judgment. (*Compare id.* at #315–16 *with* Doc. 22-2, #208, Doc. 22-3, #239). The August 12, 2020, report describes Fortson as "Stuporous. Alternately crying, then euphoric and giggling, then paranoid." (Doc. 25, #315). It also notes "[n]ystagmus," "[a]taxic gait," "[s]lurred speech," and "[n]o peripheral edema." (*Id.*). And the April 20, 2022, medical evaluation notes Fortson's head wound and "superficial abrasions," as well as noting that his right calf right calf "is significant for a bruise." (*Id.* at #316). Finally, Fortson attaches some of the same Use of Force reports that Defendants had appended to their Motion for Summary Judgment. (*Id.* at #311–13).

In response, the Magistrate Judge issued an R&R in June 2023 recommending that the Court deny Defendants' Motion for Summary Judgment. (Doc. 27, #328–29). As to the objective component of Fortson's excessive force claims, she disagrees with Defendants' characterization of the medical reports and writes that "[t]he relatively non-serious nature of Plaintiff's injuries [] does not warrant summary judgment in favor of Defendants." (*Id.* at #326–27). And, considering the subjective component, she writes that Defendants' "accounts contradict Plaintiff's allegations that the force used was unnecessary. But presentation of contradictory evidence is not sufficient to obtain summary judgment." (*Id.* at #328). In short, the June R&R concludes that the Court should deny summary judgment because "Defendants have not demonstrated the absence of a genuine issue of material fact." (*Id.* at #329).

All four remaining Defendants—Henness, Anderson, Capella, and Mann— objected to the June 2023 R&R. (Doc. 28). They argue that (1) the R&R treats allegations of de minimis injuries outlined in a verified complaint as sufficient, in and of themselves, to satisfy the objective component of an excessive force claim, which contradicts caselaw from district courts within this Circuit, (*id.* at #335–36); and (2) "[t]he record in this case is devoid of any evidence that Defendants acted maliciously or sadistically for the sole purpose of causing harm to Plaintiff," (*id.* at #336). They also say that if the Court "is still unsure if the record in this case presents a genuine issue of material fact, Defendants respectfully request an opportunity to present evidence in a supplemental motion for summary judgment." (*Id.* at #337).

9

Next, Fortson filed two more documents. The first is a declaration that states that Fortson has not received any legal mail and that Defendants are retaliating against him. (Doc. 30, #342). The second is a letter seeking video footage of the incidents at issue in the Proposed Amended Complaint, "[d]ocuments relevant to pass [sic] mistreatment of inmates and or complaints against defendants[,]" and photos of his injuries from the April 2022 incident. (Doc. 31, #345).

Because both sides asked the Court to review the previously unsubmitted video footage in connection with deciding the summary judgment issue, the Court ordered Defendants to submit all footage relevant to the two incidents and to provide Fortson with a copy. (12/29/23 Not. Order). Defendants then requested a protective order to allow Fortson to view the footage without providing him a copy for security reasons. (Mot., Doc. 32, #349–50). After the Court granted the Motion for Protective Order (Doc. 34), Defendants provided the video footage as ordered.

Finally, Fortson submitted a Motion for Order Compelling Discovery seeking the same materials as he sought in his last letter. (Doc. 35, #360). He "also move [sic] for an order pursuant to rule, 37(a)(4), requiring defendants or counsel to pay Plaintiff the sum of $50.00, [sic] dollars as a reasonable expenses [sic] in obtaining this order, on the ground that defendants counsel refusal [sic] to answer correspondents [sic] by the plaintiff, until a motion (doc 31) was filed[.]" (*Id.* at #361). The Magistrate Judge denied that motion as untimely. (Doc. 37, #382).

These matters are now ripe for the Court's review.

10

## LEGAL STANDARDS

### A.    Reports And Recommendations (R&Rs)

Under Federal Rule of Civil Procedure 72(b)(3), "district courts review an R&R de novo after a party files a timely objection." *Bates v. Ohio Dep't of Rehab. & Corr.*, No. 1:22-cv-337, 2023 WL 4348835, at *1 (S.D. Ohio July 5, 2023). But that de novo review requirement extends only to "any portion to which a proper objection was made." *Id.* (citation omitted). In response to such an objection, "the district court may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.* (quoting Fed. R. Civ. P. 72(b)(3)) (cleaned up).

By contrast, if a party makes only a general objection, that "has the same effect[] as would a failure to object." *Howard v. Sec'y of Health & Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). A litigant must identify each issue in the R&R to which he objects with sufficient clarity for the Court to identify it, or else the litigant forfeits the Court's de novo review of the issue. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) ("The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious.").

That said, Fortson is proceeding pro se. A pro se litigant's pleadings should be construed liberally and are subject to less stringent standards than formal pleadings filed by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Franklin v. Rose*, 765 F.2d 82, 84–85 (6th Cir. 1985). But pro se litigants still must comply with the procedural rules that govern civil cases. *McNeil v. United States*, 508 U.S. 106, 113 (1993). And "[t]he liberal treatment of pro se pleadings does not require the lenient

treatment of substantive law." *Johnson v. Stewart*, No. 08-1521, 2010 WL 8738105, at *3 (6th Cir. May 5, 2010).

For unobjected portions of the R&R, "the advisory committee notes to Federal Rule of Civil Procedure 72(b) suggest that the Court still must 'satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Redmon v. Noel*, No. 1:21-cv-445, 2021 WL 4771259, at *1 (S.D. Ohio Oct. 13, 2021) (collecting cases).

## B.   Summary Judgment

The June R&R analyzes a motion for summary judgment. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the burden of establishing that there are no genuine disputes of material fact, which may be accomplished by showing that the non-moving party lacks evidence to support an essential element of his case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A.*, 12 F.3d 1382, 1388–89 (6th Cir. 1993). In other words, when dealing with an element on which the non-movant bears the burden at trial, "[i]n order for the non-movant to defeat a summary-judgment motion, there must be evidence on which the jury could reasonably find for the non-movant." *Clabo v. Johnson & Johnson Health Care Sys., Inc.*, 982 F.3d 989, 992 (6th Cir. 2020) (cleaned up). And as the Sixth Circuit has also explained, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for

12

summary judgment; the requirement is that there be no genuine issue of material fact." *Int'l Outdoor, Inc. v. City of Troy*, 974 F.3d 690, 697 (6th Cir. 2020) (cleaned up) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48 (1986)).

In sum, the non-moving party, at this stage, must present some "sufficient disagreement" that would warrant submission to a jury. *Moore v. Phillip Morris Cos.*, 8 F.3d 335, 340 (6th Cir. 1993) (quoting *Anderson*, 477 U.S. at 251). In making that determination, the Court must view the evidence in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995). And "[i]n reviewing a summary judgment motion, credibility judgments and weighing of the evidence are prohibited." *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005). That said, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). And "a mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat summary judgment; rather, the non-moving party must present evidence upon which a reasonable jury could find in her favor." *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 529 (6th Cir. 2012) (cleaned up).

## LAW AND ANALYSIS

For the reasons discussed below, the Court dismisses all of Fortson's claims arising from both the 2020 incident and the 2022 incident.

A. **The January R&R**

The January R&R screened the Complaint under 28 U.S.C. §§ 1915(e)(2) and 1915A. To screen the Complaint, the Magistrate Judge divided the claims in Fortson's Proposed Amended Complaint into those for excessive force and those for deliberate indifference to serious medical needs. The Court adopts the same structure here and agrees that it should dismiss Fortson's excessive force claims relating to the April 2022 incident, along with Fortson's deliberate indifference claims relating to that same incident, for the reasons discussed below.

1. **The Excessive Force Claims.**

An Eighth Amendment excessive force claim has two components—one objective and one subjective. *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011). The former relates to the amount of force used and the latter to the actor's intent in using that force. *Id.* The precise contours of those components matter in connection with the Court's review of the June R&R, and so the Court discusses them when it turns to that R&R. As for the January R&R, though, the issues turn on more general pleading rules. Based on those rules, the Court agrees with the Magistrate Judge's conclusions in the January R&R—that Fortson has failed to state a viable excessive force claim against either Henness, Starkey, or Knick relating to the April 2022 incident.

First, the Magistrate Judge determined that Fortson never alleged any specific actions that Henness took during the April 2022 incident that could satisfy the objective component of an excessive force claim. (Doc. 16, #153). Fortson's only

14

allegation against Henness was that he ordered the other Defendants to shackle Fortson. (Doc. 15, #143, 153). But "[i]n the absence of any allegations that the shackling caused pain, lasting injury, or was inflicted in a manner repugnant to the conscience of mankind, this type of de minimis use of physical force is necessarily excluded from constitutional recognition." (*Id.* at #153 (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (cleaned up)). So she concluded that the claims against Henness arising from the April 2022 incident should be dismissed under 28 U.S.C. § 1915(e). (*Id.*).

She also found that the claims against Knick and Starkey based on that same April 2022 incident should be dismissed for lack of any specific allegations against those two Defendants. (*Id.*). "[D]amage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008). "[C]ategorical references to 'Defendants'" do not meet this standard. *Marcilis v. Twp. of Redford*, 693 F.3d 589, 596–97 (6th Cir. 2012). Neither do allegations that an individual defendant "was present and perhaps involved in [Fortson's] restraint," without more. *Lanman*, 529 F.3d at 687. Here, Fortson "alleges only that Knick did 'something' to his shin, and alleges no specific conduct on the part of Starkey." (Doc. 16, #153; *see* Doc. 15, #143–44). So the Magistrate Judge determined that Fortson has not alleged with particularity that Knick or Starkey violated his constitutional rights and recommended dismissing the claims against them.

Fortson objects to the conclusions about both (1) Henness, and (2) Knick and Starkey. As to the former, he argues that Henness was retaliating against him in April 2022 and thus should be liable for the shackling order. (Doc. 20, #173). But arguments about Henness's intent go only to the subjective component of an Eighth Amendment excessive force claim, and do not address whether shackling satisfies the objective component. *Williams*, 631 F.3d at 383. So his objection does not persuade the Court that the Magistrate Judge erred in determining that the excessive force claims against Henness based on the April 2022 incident fail as a matter of law.

Fortson's other objection is similarly unpersuasive. He argues that he has experienced lasting injuries from the April 2022 incident. (Doc. 20, # 174). But even if that allegation were true, he simply has not alleged with particularity that Knick or Starkey *caused* those injuries. Alleging a defendant did "something" does not suffice; a plaintiff must provide at least some factual details about what that "something" entailed.

In short, the analysis above supports dismissing the excessive force claims against Henness, Knick, and Starkey relating to the April 2022 incident. So the Court adopts the January R&R's recommendation to dismiss those claims.[5] And because the Proposed Amended Complaint is Fortson's second failed attempt to plead a claim on which relief can be granted, the Court dismisses those claims with prejudice.

---

[5] Moreover, as discussed more below, the video evidence "blatantly contradicts" Fortson's account of that event. *Scott*, 550 U.S. at 380. So, even if Fortson's Proposed Amended Complaint had stated viable claims against these three guards, those claims would have failed on summary judgment, as did the claims against the other two guards involved in the April 2022 incident.

16

### 2.      Deliberate Indifference To Medical Need

Like an excessive force claim, a deliberate indifference to medical need claim under the Eighth Amendment has objective and subjective components. *Brawner v. Scott Cnty.*, 14 F.4th 585, 591 (6th Cir. 2021), *cert. denied*, 143 S. Ct. 84 (2022). "To meet the objective component, the plaintiff must show that the medical need is sufficiently serious." *Id.* (cleaned up). "In examining whether a claimed injury is 'sufficiently serious,' courts look to the *effect* of any delay in treatment caused by an officer's inaction." *Vaughn v. City of Lebanon*, 18 F. App'x 252, 274 (6th Cir. 2001). Establishing such detrimental effect requires the plaintiff to place verifying medical evidence in the record. *Id.* The subjective component, meanwhile, requires the plaintiff to "show that an official knew of and disregarded an excessive risk to inmate health or safety." *Brawner*, 14 F.4th at 591 (cleaned up). It does not require a plaintiff to show that the defendant had an express intent to inflict unnecessary pain. *Id.* But it does require the plaintiff to "demonstrate that the official was aware of facts from which an inference of substantial risk of serious harm to inmate health or safety could be drawn and that the official actually drew the inference." *Id.*

Fortson's deliberate indifference to medical need claim stems from the alleged fifteen-minute delay in treating his head injury after he fell from the bunk in April 2022. (Doc. 15, #143). But because he never alleged any detrimental effects of that delay, the Magistrate found that he cannot satisfy the objective component of the deliberate indifference standard. (Doc. 16, #155). And Fortson did not object to that determination, which means the Court reviews it only for clear error. Based on the

17

Court's review, the Court finds no error, let alone clear error, in the Magistrate Judge's conclusion.

In sum, the Court adopts the January R&R (Doc. 16) in toto and overrules Fortson's Objections (Doc. 20) to it. Accordingly, the Court dismisses Fortson's deliberate indifference to medical need claims against all Defendants, his excessive force claims against Knick and Starkey, and his excessive force claims against Henness arising from the April 2022 incident. And once again, it dismisses those claims with prejudice because the Proposed Amended Complaint is Fortson's second attempt to plead a claim on which relief can be granted.

**B.    The June R&R**

Next, the Court turns to the June R&R (Doc. 27), which recommends denying Defendants' Motion for Summary Judgment (Doc. 22) on the remaining excessive force claims relating to both the August 2020 incident and the April 2022 incident. After reviewing the video evidence, which in fairness to the Magistrate Judge was not yet part of the record when the Magistrate Judge prepared the June R&R, the Court reaches a different resolution than the R&R suggests. More specifically, for the reasons discussed below, the Court dismisses all remaining excessive force claims against all remaining defendants relating to both incidents for failure to meet the objective component of an excessive force claim.

**1.    The Legal Framework For Excessive Force Claims**

Because the precise contours of the applicable Eighth Amendment framework matter to the Court's resolution with regard to this R&R, the Court begins there. "The

18

Eighth Amendment proscribes the unnecessary and wanton infliction of pain against prisoners." *Williams*, 631 F.3d at 383. A claim for excessive force under the Eighth Amendment must satisfy two components—one subjective, one objective. *Id.*

"The subjective component focuses on the state of mind of the prison officials. The relevant inquiry is whether force was applied in a good faith effort to maintain or [to] restore discipline or maliciously and sadistically for the very purpose of causing harm." *Id.* (cleaned up).

As for the objective component, the Sixth Circuit has described the analysis this way:

> The objective component requires the pain inflicted to be 'sufficiently serious.' As the Supreme Court has stated, "not 'every malevolent touch by a prison guard gives rise to a federal cause of action.'" *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quotation omitted). Rather, the Eighth Amendment protects prisoners only from that conduct which is repugnant to the conscience of mankind. The objective component of the Eighth Amendment is a "contextual" inquiry that is 'responsive to contemporary standards of decency. This Court has held that the Eighth Amendment must draw its meaning from the evolving standards of decency that mark the progress of a maturing society. Thus, courts should interpret the Eighth Amendment in a flexible and dynamic manner.

*Rafferty v. Trumbull Cnty.* 915 F.3d 1087, 1094 (6th Cir. 2019) (citations and quotations omitted). The extent of a prisoner's injury may aid the analysis on this component by helping to show that the force at issue was so de minimis that it is "exclude[d] from constitutional recognition." *Wilkins*, 559 U.S. at 37–38. At the same time, the lack of seriousness of any resulting injuries is not dispositive. *Id.* at 37 ("When prison officials maliciously and sadistically use force to cause harm[,] … contemporary standards of decency always are violated ... whether or not

significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment. no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." (cleaned up)).

From this description, certain rules emerge. First, the Supreme Court has made clear that "not every malevolent touch" necessarily gives rise to an excessive force claim. *Id.* In other words, the categories "malevolent touch" and "excessive force" are not co-extensive. Second, the inquiry for the objective component generally focuses on the quantum of force used, and the question is whether the "pain inflicted" by that use of force is "sufficiently serious." *Rafferty*, 915 F.3d at 1094 (cleaned up).

The question, then, is what those rules imply about the role that the injury a plaintiff has suffered plays in the analysis. The Supreme Court has made clear that a "significant injury" is not required; nor is there any "arbitrary quantity of injury" that a plaintiff must show. *Wilkins*, 559 U.S. at 37 (cleaned up). That suggests that even a de minimis injury can give rise to a claim. But the requirement that the "pain inflicted" be "sufficiently serious" strongly suggests that there must be at least *some* injury, as otherwise just about any "malevolent touch" could be actionable, the very proposition that the Supreme Court *rejected* in *Wilkins*. In other words, one indicator of when the force at issue results in pain that is "sufficiently serious" to "count" for constitutional purposes is whether the pain led to at least *some* injury requiring medical treatment, even if it is generally de minimis.[6] *See Richmond v. Settles*, 450 F. App'x 448, 454 (6th Cir. 2011).

---

[6] There is one potential exception to this requirement of some injury. Sometimes the force at issue is excessive, not because of the seriousness of pain inflicted, but because the *type of*

### 2. Fortson Fails to Create a Genuine Dispute on the Objective Component of the Excessive Force Claim Relating to the August 2020 Incident.

With that framework in hand, the Court turns to the August 2020 incident, and in particular the objective component of the excessive force claim Fortson asserts in connection with that incident. Because this claim is before the Court on summary judgment, what matters is the evidence. And the evidence the parties rely on in their briefing relating to that claim mainly comes from three sources: (1) Fortson's verified allegations; (2) the use of force reports and medical records that Defendants attach to their motion for summary judgment, and (3) the video evidence that Defendants have submitted.

Before discussing the contents of those three categories of evidence, though, the Court begins with a threshold issue—the extent to which it can consider each category on summary judgment. First, allegations in a verified complaint count as evidence, at least so long as they are based on personal knowledge and satisfy Rule 56. *Hooks v. Hooks*, 771 F.2d 935, 945–46 (6th Cir. 1985) ("[S]ince plaintiff's complaint was verified, to the extent that the allegations therein are based on personal knowledge, it satisfies the requirements of Rule 56(e) as an opposing

---

force used is "repugnant to the conscience of mankind." For example, courts have allowed excessive force claims based on allegations of sexual assault to proceed because of the very *nature* of the conduct, even when the conduct at issue did not involve substantial physical force or cause physical injury. *See, e.g.*, *Bearchild v. Cobban*, 947 F.3d 1130, 1144 (9th Cir. 2020) ("[A]n inmate need not prove that an injury resulted from sexual assault in order to maintain an excessive force claim under the Eighth Amendment. Any sexual assault is objectively repugnant to the conscience of mankind and therefore not *de minimis* for Eighth Amendment purposes." (cleaned up)). Whatever the precise contours of the appropriate analytical framework in such cases, that framework is not at issue here, as the conduct at issue here was the more "typical" kind of excessive force case involving the alleged application of physical force in the midst of transporting a prisoner.

affidavit."). That said, the Court cannot consider the additional "facts" Fortson purports to lay out in his Opposition to Summary Judgment. His brief is neither a verified complaint nor a document signed under penalty of perjury. *Belser v. James*, No. 16-2578, 2017 WL 5479595, at *2 (6th Cir. June 6, 2017) ("Each of Belser's pleadings was signed under penalty of perjury, and is therefore sufficient to qualify as an affidavit for the purposes of summary judgment." (cleaned up)). Thus, the Court will consider the allegations in the verified complaint, but not Fortson's later efforts to supplement those allegations in his Opposition (e.g., his added details as to why he did not vomit during the August 12, 2020, incident, (Doc. 25, #309)).

Second, Defendants' Motion for Summary Judgment attaches both (1) a "Deputy Warden of Operations Review of Use of Force" report, which includes other use-of-force and similar reports containing eyewitness and participant recollections of the August 12, 2020 incident, all of which are signed and dated, (*see* Doc. 24-2), and (2) a sworn declaration from Correction Warden Assistant Norm Evans, (Evans Decl., Doc. 22-1, #191–92). The Evans Declaration reads, "[t]he Use of Force Report dated August 20, 2020 [referring to the Deputy Warden report, which includes the other reports], … was made at or near the time of the incident … by person(s) with knowledge of the matters described," and further states that, "these types of records are kept in the ordinary course of regularly conducted business activities of the WCI." (*Id.* at #191–92).

Rule 56 generally allows courts to consider "affidavits" so long as they are made based on personal knowledge. Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration

used to support or [to] oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."). But the Use of Force Report, and its attachments, are not affidavits, as it appears none were signed under penalty of perjury, and Defendants do not argue otherwise. *Belser*, 2017 WL 5479595, at *2. That said, a party can also cite to "documents" in the record, so long as the documents would be admissible or contain evidence that may be proffered in an admissible format at trial. Fed. R. Civ. P. 56(c)(1)(A), (2). But that potentially gives rise to a separate problem—Henness's account of the August 2020 events and the other correctional officers' accounts are all hearsay, and thus not admissible, absent an exception to the hearsay rule. Here, though, "[t]he prison memorandum is a business record and as such is an exception to the hearsay rule," at least so long as it is based on first-hand knowledge. *See Mitchell v. Morgan*, 844 F. Supp. 398, 401 (M.D. Tenn. 1994) (citing Fed. R. Evid. 803(6)); *Stephen v. Rowland*, 103 F.3d 140, 1996 WL 671639, at *2 (9th Cir. Nov. 7, 1996) ("As prison records and reports from officers involved in the altercation, the records [the parties] refer[] to fall under the business records exception to the hearsay rule."). So although it would perhaps be better practice to obtain an actual affidavit from the officers involved (and any other witnesses who have useful information), the Court concludes that it may consider the narratives from the various signed reports attached to the Deputy Warden's "Review of Use of Force" Report.[7]

---

[7] The Deputy Warden's "Review of Use of Force" Report also incorporates an "Inmate Use of Force Statement," which is a handwritten document that Fortson signed and dated

Finally, there is the recently submitted video evidence. Neither party provided that evidence in connection with the briefing on summary judgment. Nor was it otherwise part of the record in this case. Generally, that would preclude the Court from relying on it. Here, though, both sides specifically requested that the Court consider it, so the Court will do so. *Cf. Kermavner v. Wyla, Inc.*, 250 F. Supp. 3d 325, 329 (N.D. Ohio 2017).

So where does that leave us? Start with the August 2020 incident. The June R&R found that there was a genuine dispute about the objective component of the Eighth Amendment claim relating to the August 2020 incident. It says that (1) "the injuries that Plaintiff alleges in his Amended Complaint—that he struck his head and was forced to inhale exhaust fumes—are not inconsistent with" the medical records to which Defendants point, and (2) the de minimis nature of those injuries does not doom his claims under the objective component of the excessive force analysis. (Doc. 27, #326–27). Therefore, the Magistrate Judge determined that the verified allegations were sufficient to create a genuine factual dispute as to whether Fortson can prevail on his claim against Henness relating to that incident.

The Court does not agree. Henness's Use of Force Report presents an admissible account under which he used a de minimis amount of force on Fortson. According to Henness, he (1) guided Fortson's torso away from his so that Fortson would not vomit on him and (2) used "slight force" to free his hand from Fortson's

---

describing the August 2020 event. (Doc. 22-2, #209). That document, assuming it is authentic (an issue Fortson does not raise), is a party admission. It is thus not hearsay, *see* Fed. R. Evid. 801(d)(2), and is admissible against Fortson.

when Fortson became agitated and would not release it. (Doc. 22-2, #197). That is de minimis force exerted in good faith for which no constitutional violation is wrought. *Wilkins*, 559 U.S. at 37–38. The accounts from the other officers who witnessed the event likewise do not provide any evidence suggesting that Henness used greater-than-de-minimis force against Fortson. (Doc. 22-2, #195, 200–06). Indeed, Fortson's own account from that day reflects much the same. He says, "Everything's good, I don't remember much, I hope things are fine with Inmates and C/O's involved." (Doc. 22-2, #209). The medical examination for the incident likewise does not note any apparent head injury or bruising to the face or skull. (*Id*. at #208). In short, the evidence that Henness presents is all consistent with him applying a de minimis amount of force to Fortson. Therefore, absent additional evidence creating a genuine factual dispute, Fortson's excessive-force claim related to that incident fails on the objective prong.

The question, then, is whether Fortson has presented enough evidence to create a genuine factual dispute as to Henness's account. He presents two sources of evidence that the Court can consider. The first consists of the verified allegations in his Proposed Amended Complaint, which the Court can consider for the reasons discussed above. The second is the medical records.

Start with the former. The verified allegations in the Proposed Amended Complaint are cursory at best. Fortson's full account of the events is that he was "pinn[ed]" to the side of the cart with his head hanging over the side and that he "struck his head." (Doc. 15, #142). But he fails to provide any details about how hard

25

he struck his head, what struck his head (The cart itself? A wall as the cart drove by? Something else?), or the amount of pain or injury (if any) that resulted from his striking his head. Of course, he also says that his head was positioned so that he was forced to inhale exhaust fumes. (*Id.*). But he gives no indication of any pain or injury that resulted from that, beyond the odor of the exhaust itself.

None of those allegations, alone or in combination, *necessarily* describes force of such magnitude to inflict "sufficiently serious" pain or injury to be constitutionally cognizable. *See Rafferty*, 915 F.3d at 1094. To be sure, depending on what Fortson means by his head being "struck," an allegation that he struck his head *could* be enough. Take an easy example. If the allegation that his head was "struck" meant that Henness hit him in the head with a baseball bat, that would certainly suffice. Similarly, if Fortson is alleging that Henness flung him over the side of the cart, pinned him there, and then deliberately cut corners when turning so that Fortson's head would strike against the walls as the cart drove by, that would also suffice. But Fortson fails to describe the force used, or the resulting pain, *at all*. Evidence that is vague and conclusory does not create a genuine dispute of material fact—and vague and conclusory assertions are all Fortson offers in his verified Proposed Amended Complaint. *Berry v. U.S. Postal Serv.*, No. 22-3577, 2023 WL 3035371, at *2 (6th Cir. Apr. 21, 2023) ("Affidavits that contain no specific facts but are merely conclusory cannot create a genuine dispute of fact sufficient to defeat summary judgment." (citing *Doren v. Battle Creek Health Sys.*, 187 F.3d 595, 598–99 (6th Cir. 1999)). Sure, such allegations were enough to state a claim plausible claim for relief at the motion-

to-dismiss stage. But more is needed now. Fortson must create a genuine dispute by offering "specific facts" to rebut the evidence Henness provided substantiating his account of the force that he used against Fortson. *Doren*, 187 F.3d at 598 ("Federal Rule of Civil Procedure 56(e) states that a party must offer 'specific facts showing that there is a genuine issue for trial.'"). The allegations in the Proposed Amended Complaint do not fit the bill.

Fortson also points to the medical records. But they do not describe any kind of head injury at all—no mention of bruising, edema, concussion, or any other head wounds. (Doc. 25, #315). Fortson seems to suggest that the symptoms the nurse noted—such as ataxic gate and nystagmus—along with the altered behavior she described could be consistent with a head injury. (Doc. 25, #309). That may well be. But the Court notes two problems with that argument. First, Fortson has no actual *evidence*, such as an expert report or a statement from the treating medical personnel, that suggests any causal connection between the observed symptoms and any head trauma. *See Scott v. Mem. Health Care Sys., Inc.*, No. 1:13-cv-361, 2015 WL 12531987, at *5–*6 (E.D. Tenn. Sept. 29, 2015). The Court cannot simply take judicial notice that an ataxic gait could be consistent with a head injury. Separately, Henness's (unrebutted) version of the events states that, when Henness first responded to the location where Fortson was, "Inmate Fortson [] appeared to be acting unnatural." (Doc. 22-2, #197). Henness further states that "[h]is speech was slurred and his gait was off," and that "he was extremely wobbly and could not stand up." (*Id*.).  Fortson offers no admissible evidence to rebut that account. So that means that as a matter

27

of undisputed fact, Fortson was "extremely wobbly" when Henness arrived. And to put that in context the Harvard Health Dictionary defines "ataxia" as "[b]eing unable to control movement; symptoms include shaking and an unsteady walk." *See Med. Dictionary of Health Terms: A–C*, HARV. HEALTH PUBL'G (Dec. 13, 2011), https://perma.cc/W9ZC-ER42. So Fortson had an ataxic gait *before* Henness got there. Accordingly, even if the Court could take judicial notice that an ataxic gait *may* be indicative of a head injury, here the record provides no reason to believe that this symptom resulted from any head injury that Henness caused.

And that presents a problem for Fortson. In the face of Henness's account, which is backed up by admissible evidence, it was Fortson's job to present evidence—not conjecture—to create a genuine dispute as to whether Henness applied an unconstitutional level of force to him. Fortson failed to do so.

Finally, the Court notes that the video evidence does not change its view of the August 2020 incident, one way or the other. The only footage Defendants provided from that date is surveillance footage that shows Defendants walking Fortson out to the medical cart. (August 2020 Surveillance Footage, 5:18:03 PM–5:20:13 PM). Defendants did not provide any body camera footage or surveillance footage showing what happened once they reached the cart, presumably meaning none is available. So the video evidence neither bolsters nor disproves the record evidence discussed above.

In short, "a mere scintilla of evidence in support of [Fortson's] position is insufficient to defeat summary judgment." *Tingle*, 692 F.3d at 529 (cleaned up). Based

on the vagueness of Fortson's initial allegations and the lack of any additional evidence substantiating an unconstitutional application of force, the Court cannot conclude that the verified allegations create a "sufficient disagreement" to warrant submission to a jury. *Moore*, 8 F.3d at 340. And as the Sixth Circuit observed in another context, "[t]he leniency granted to pro se petitioners … is not boundless[,] … and liberal construction does not require a court to conjure allegations on a litigant's behalf." *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004) (cleaned up). Accordingly, the Court grants Henness summary judgment and dismisses Fortson's excessive force claim arising from the August 2020 incident for failure to create a genuine dispute regarding the objective component of that claim.

### 3. The Video Evidence Blatantly Contradicts Fortson's Account of the April 2022 Incident.

As for the April 2022 incident, Fortson alleges that Anderson and Cappella "toss[ed]" him onto a medical cart so he landed on his handcuffed hands, and that Mann pushed his leg back over his head until he screamed. (Doc. 15, #142–43). If true, those allegations would support a determination that these defendants used excessive force in violation of the Eighth Amendment. The problem for Fortson is that the video evidence "blatantly contradict[s]" his story. *Scott*, 550 U.S. at 380.

The footage shows Anderson and Cappella walking Fortson out to the medical cart and asking him to turn around so they can put him in the gurney, at the same time someone says "a little dehydrated" in the background. (Lt._C._Henness-3, 0:00–0:24). As they lift him onto the gurney, Fortson shouts "ow" at one point—perhaps from his cuffed hands being briefly caught on the edge of the gurney. (*Id.* at 0:24–

0:40). Defendants then ask Fortson to sit up, situate him on the gurney as he flails, and strap him into the gurney as they tell him to relax because they are trying to help him. (*Id.* at 0:40–02:09 (telling Fortson repeatedly to "relax Big Dog")). And as they situate him on the gurney, two guards grab Fortson's legs to keep him from kicking them. (Officer_J._Capella, 0:56–1:10; Officer_K._Dunn, 0:50–1:18).

That interaction directly contradicts Fortson's version of events. And having reviewed all available video evidence, as all parties suggested the Court should do, nothing in the rest of that footage or the other officers' body camera footage comes any closer to substantiating any of Fortson's claims.[8] The only force the Court observes across all of the videos in the summary judgment record is the kind of incidental, good-faith, de minimis force that does not work a constitutional violation. *Wilkins*, 559 U.S. at 37–38. Simply, the force was far short of being "repugnant to the conscience of mankind," *id.* at 38 (citation omitted), and did not cause "sufficiently serious" pain, *Rafferty*. 915 F.3d at 1094. Based on this indisputable video evidence, the Court dismisses all of Fortson's excessive force claims arising from the April 2022 incident.

*       *       *

In short, based on the lack of admissible evidence supporting Fortson's claims arising out of the August 2020 incident and the video evidence refuting his account of the April 2022 incident, the Court concludes that Fortson has failed to create a genuine dispute as to the objective component of an Eighth Amendment excessive

---

[8] The Court reviewed body camera footage from Lt. Henness and Officers Mann, Starkey, Adams, Anderson, Capella, Knick, and Dunn.

force claim regarding either incident. Because that is fatal to his claims, the Court need not, and thus does not, consider the subjective component of those claims. Rather, the Court grants summary judgment to all remaining defendants on the excessive force claims regarding both incidents.

## C.    Fortson's Motion to Compel Discovery

One motion remains: Fortson's Motion for an Order Compelling Discovery (Doc. 35). There he requests three things: evidence of past complaints against Defendants, color photos of his 2022 injuries, and video footage of the incidents at issue. (*Id.* at #360). On February 9, 2024, the Magistrate Judge ruled on this non-dispositive motion, as Federal Rule of Civil Procedure 72(a) says she should. (Doc. 37). Typically, Fortson would have fourteen days to object, and this Court's review of the order on this nondispositive motion would be limited to whether it contained "clear error[]" or was "contrary to law." Fed. R. Civ. P. 72(a). But, in the interest of finality, and because the correct outcome on that motion is clear, the Court will review and decide Fortson's motion de novo, rather than relying on the Magistrate Judge's disposition. Based on the Court's independent review, the Court denies the motion for three reasons.

First, Fortson's request for the additional discovery is moot—the Court is dismissing all claims arising out of both the 2020 and 2022 incidents, and the order granting Defendants' motion for a protective order (Doc. 34) provided him access to the video footage. Second, even if the Court were not dismissing all claims, the Court concludes, as the Magistrate Judge did, that the Motion is untimely. (Doc. 37, #382).

31

Under the Calendar Order that applies to this matter, discovery closed on March 31, 2023. (Doc. 8, #90). Fortson fails to provide any good reason to allow him to reopen discovery now. Third, the Court fails to see how past complaints against Defendants would be admissible here, *see* Fed. R. Evid. 404(b), notwithstanding Fortson's conclusory assertions to the contrary. (Doc. 35, #362 ("Plaintiff only seeks relevant information to plaintiff [sic] claims[.]")). And "federal courts will not 'unlock the doors of discovery' for a fishing expedition based on a plaintiff's speculative assertions," which is especially true when those proposed fishing expeditions occur after discovery is closed. *Changizi v. Dep't of Health & Hum. Servs.*, 82 F.4th 492, 498 (6th Cir. 2023) (quoting *Iqbal*, 556 U.S. at 678). So the Court denies Plaintiff's motion to the extent that it seeks this additional discovery.

In that same motion, Fortson "also move [sic] for an order pursuant to rule, 37(a)(4), requiring defendants or counsel to pay Plaintiff the sum of $50.00, [sic] dollars as a reasonable expenses [sic] in obtaining this order, on the ground that defendants [sic] counsel refusal [sic] to answer correspondents [sic] by the plaintiff, until a motion (doc 31) was filed[.]" (Doc. 35, #361). But he has not pointed to any sanctionable conduct by Defendants or their counsel. So although the Court understands that the expense of preparing and receiving legal mail is a challenge for Fortson, there is simply no basis for the Court to order Defendants or their counsel to pay him $50.00. Accordingly, the Court also denies this portion of Fortson's Motion for Order Compelling Discovery.

## CONCLUSION

For the reasons given above, the Court **OVERRULES** Fortson's objections (Doc. 20) and **ADOPTS** the January R&R (Doc. 16), thereby dismissing all claims except those the Magistrate Judge specifically recommended in the January R&R should go forward. And because this is Fortson's second failed attempt to plead a viable cause of action, the Court **DISMISSES** those claims **WITH PREJUDICE**. As to those remaining claims, the Court **REJECTS** the June R&R (Doc. 27). More specifically, the Court **SUSTAINS** Defendants' objections to the June R&R (Doc. 28) and, contrary to the recommendation in the R&R, the Court **GRANTS** Defendants' Motion for Summary Judgment (Doc. 22) and thus **DISMISSES** all remaining claims **WITH PREJUDICE**. Finally, the Court **DENIES** Fortson's Motion for Order Compelling Discovery (Doc. 35). The Court therefore **DIRECTS** the Clerk to enter judgment and to **TERMINATE** this case on its docket.

**SO ORDERED.**

February 23, 2024
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**

33